# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

JAMES ANASTOS, JR., *et al.*,    )
           )
      Plaintiffs,    )
           )
      v.    )     CAUSE NO.: 3:10-CV-208-TLS
           )
HONEYWELL INTERNATIONAL, INC.,  )
           )
      Defendant.    )

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Dismiss [ECF No. 6], which was filed on June 1, 2010.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their Complaint [ECF No. 1] in the St. Joseph Superior Court on April 23, 2010. In the Complaint, the nineteen Plaintiffs, all current or former employees of the Defendant who have been represented by Local No. 9 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), assert twenty-one employment-related claims against the Defendant. In Counts I through XIX, each individual Plaintiff asserts a wage claim. Each of these nineteen counts alleges that the Defendant has misclassified the Plaintiffs with respect to seniority, has paid them less than what they are entitled to under the Master Agreement, and has violated Indiana's wage payment statute, Ind. Code § 22-2-5-1 *et seq.*, and consequently, the Plaintiffs claim entitlement to damages under this Indiana statute. In these nineteen counts, the Plaintiffs reference the Master Agreement as to each employee's pre-recall and post-recall classification (Tier I or Tier II employee for seniority and wage purposes), notice requirements, compliance with terms to retain seniority, and hourly

rates of pay. In Count XX, the Plaintiffs claim that the Defendant has violated the Master Agreement by hiring non-union workers as new employees instead of recalling any laid-off union employees. In Count XXI, the Plaintiffs allege that the Defendant has violated the Master Agreement by failing to recall laid-off employees with more seniority before recalling laid-off employees with less seniority. The Complaint also alleges that "the terms of the Plaintiffs' employment with [the Defendant] (including their wages) were governed by the Master Agreement, as modified and interpreted by the parties thereto, between Local No. 9 and [the Defendant]." (Compl. ¶ 4.)

On May 24, 2010, the Defendant filed a Notice of Removal [ECF No. 2], premising this Court's subject-matter jurisdiction on 28 U.S.C. § 1337 and claiming preemption by § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). On June 1, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendant filed a Motion to Dismiss [ECF No. 6] and Memorandum of Points and Authorities in Support [ECF No. 7]. Along with its Motion and Memorandum, the Defendant submitted the Master Agreement [ECF No. 7-1] between divisions of the Defendant and the UAW, the Local Agreement (Supplemental Agreement) [ECF No. 7-2] between the Defendant and the UAW (and its Local No. 9), a Memorandum of Agreement (MOA) document [ECF No. 7-3] agreed to by the Defendant and Local No. 9, and the Local Agreement (Wage Structures) [ECF No. 7-4] between the Defendant and the UAW. On June 22, the Plaintiffs filed a Response [ECF No. 13], and on July 6, the Defendant filed a Reply [ECF No. 16].

**RULE 12(b)(6) STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. In considering motions to dismiss for failure to state a claim, "[courts] construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In ruling on Rule 12(b)(6) motions to dismiss, courts generally must confine their inquiry to the factual allegations set forth within the operative complaints. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). When parties seeking dismissal under Rule 12(b)(6) submit documents with their motions to dismiss, courts can either exclude the documents or convert the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Under Rule 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc.*, 987 F.2d at 431. Documents that fall within this "narrow" exception must be "concededly authentic." *Tierney,* 304 F.3d at 738. Under the exception, the Seventh Circuit has, on several occasions, affirmed the district court's consideration of extraneous materials not attached to a complaint where a claim arises from a contract or other written agreement between the parties. *See Venture Assoc.,* 987 F.2d at 431–32; *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

## DISCUSSION

The Defendant asks the Court to dismiss the Plaintiffs' Complaint because the Plaintiffs' claims are preempted by § 301 of the LMRA, 29 U.S.C. § 185. The Defendant contends that the resolution of the Plaintiffs' claims depends upon the interpretation and construction of various provisions of a collective bargaining agreement (CBA) that governs the terms of the Plaintiffs' employment with the Defendant. The Defendant points to the following documents, which it has attached to its Motion to Dismiss: the Master Agreement; the Local Agreement (Supplemental Agreement); the MOA; and the Local Agreement (Wage Structures). The Court finds that it may consider these documents and need not exclude them or convert the Motion into a motion for summary judgment. One of the documents provided by the Defendant is a written agreement explicitly referenced in the Complaint, and all of these documents are part of or relate to the CBA that is central to the Plaintiffs' claims and constitutes the core of the parties' contractual relationship. *See Minch v. City of Chi.*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (finding that although the CBA was not referenced in the plaintiffs' complaint, it was essential to the court's resolution of the motion to dismiss because the plaintiffs' due process claim rested upon the CBA's provisions, and that the court could consider the document). There is no dispute as to the authenticity of these documents.

The Defendant is correct that § 301, which provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, completely preempts state law claims where a dispute between an employer and a labor organization requires interpretation of a CBA's terms. *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498–99 (7th Cir. 1996). Stated differently, § 301 preempts state law claims that

touch on the subject matter of CBAs and ensures uniform interpretation of such agreements and uniform application of federal labor policy and federal common law. *Allis-Chalmers Corp.,* 471 U.S. 202, 209–11 (1985). The statute preempts claims founded directly on rights created by CBAs or substantially dependent upon analysis of a CBA. *In re Bentz Metal Prods. Co.,* 253 F.3d 283, 286 (7th Cir. 2001) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987)); *Atchley*, 101 F.3d at 498.

The Plaintiffs respond that their Indiana wage payment claims are not preempted because the Master Agreement will only need to be referenced and not interpreted to determine the proper wage for each Plaintiff. The Plaintiffs also argue that the wage structure explained in MOA 15 is not at issue and will not need to be interpreted. They claim that the actual wage rate for each seniority group is not located anywhere in the Master Agreement or the Local Agreement (Supplemental Agreement) but in the Local Agreement (Wage Structures), which establishes different pay structures based upon different seniority groups. Thus, the Plaintiffs are of a view that the Local Agreement (Wage Structures) is not part of the CBA between the Defendant and the union. The Plaintiffs' Response is silent as to Count XX (hiring non-union workers in violation of the Master Agreement) and Count XXI (failing to recall most senior workers in violation of the Master Agreement).

The Plaintiffs are correct that not all state law claims are preempted. *In re Bentz,* 253 F.3d at 285. Courts determine preemption on a case-by-case basis. *Id.* A state law claim is not preempted if it does not require interpretation of the CBA, even if it may require reference to the CBA. *Id.* The Seventh Circuit has instructed that "the overriding principle is that for preemption to apply, *interpretation* of the CBA and not simply reference to it is required." *Id.* at 289

(emphasis in original). "If the entitlement to wages (or other employee pay) or the amount due were at issue, the CBA would control; almost certainly, interpretation of the agreement would be necessary and would be subject to the arbitration procedures in the contract. So as to that determination, preemption would apply." *Id.* Additionally, the Supreme Court has stated:

> "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."

*Caterpillar*, 482 U.S. at 394 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)) (quotation marks and citations omitted). If preempted, the claim is transformed into a federal claim under the LMRA for breach of the CBA, and the claimants must first exhaust grievance and arbitration remedies provided in the CBA. *Atchley,* 101 F.3d at 501.

The Defendant and the Plaintiffs agree that the Master Agreement, as it is modified and interpreted by the Defendant and the UAW (and its local units), govern the terms of the Plaintiffs' employment with the Defendant (including their wages). The Master Agreement refers to supplemental agreements that are negotiated on a local level, and it establishes a mandatory Grievance Procedure, which may culminate in arbitration, for disputes between the Defendant and "an employee or group of employees with respect to rates of pay, wages, hours of employment or other conditions of employment as specified under the terms of this Master Agreement or the Local Supplement Agreements." (ECF No. 7-1 at 9.) The Local Agreement (Supplemental Agreement) is a supplement to the Master Agreement. Among other things, the Local Agreement (Supplemental Agreement) sets forth terms governing seniority for the purpose of laying off and recalling employees and establishes seniority groups. It also includes general seniority provisions, and as to wages, it provides that "[t]he minimum earned rates of employees

shall be as set forth in the rate structure." (ECF No. 7-2 at 12.) Furthermore, the Defendant and the union have agreed that thirty specific MOAs "will be in full force and effect during the term of their Supplemental Agreement." (ECF No. 7-3 at 2.) MOA 15 references a new wage structure agreed to by the Defendant and the union, and it addresses persons hired into three seniority groups and the classifications, rates of pay, and other compensation-related factors for employees with seniority who are recalled into the seniority groups. This MOA also includes a term for interpreting this MOA under the Master Agreement. The Local Agreement (Wage Structures) is also a supplement to the Master Agreement, and it defines specific rate structures for variously classified employees. Thus, the CBA, which includes these various parts, reflects an effort by the Defendant and the union (including its local units) to address by way of the Master Agreement and supplemental agreements issues related to the recall of workers, the seniority of these workers, and the wages to be paid.

The Court finds that resolution of Plaintiffs' state law claims (including the claim that the Defendant violated the Master Agreement and the Indiana wage payment statute by failing to pay the Plaintiffs the required wages (Counts I to XIX), the claim that the Defendant violated the Master Agreement by hiring non-union workers as new employees instead of recalling any laid-off union employees (Count XX), and the claim that the Defendant violated the Master Agreement by failing to recall laid-off employees with more seniority before recalling laid-off employees with less seniority (Count XXI)) require interpretation and application of the CBA's provisions. The central theme of the Plaintiffs' lawsuit is that the Defendant paid them less than what they were entitled to receive under the CBA, especially compared to other employees with less seniority and to new employees. In other words, they claim that the Defendant violated the

terms of the CBA. The Court cannot determine what wages the Plaintiffs were entitled to receive without interpreting the CBA, including the Master Agreement, the seniority provisions of the Local Agreement (Supplemental Agreement), the recall provisions of MOA 15, and the rate structure of the Local Agreement (Wage Structures). Consequently, the Plaintiffs' claims are substantially dependent on analysis of the CBA and are preempted by § 301. *See Atchley*, 101 F.3d at 500–02 (holding that claims for unpaid wages under the Indiana wage payment statute were preempted by § 301 because interpretation of the CBA was necessary to determine the regularity and frequency of wage payments); *Carter v. Tyson Foods, Inc.*, No. 3:08-CV-209, 2009 WL 4790761, at *8–9 (N.D. Ind. Dec. 3, 2009) (finding plaintiffs' Indiana wage payment statute claim preempted by § 301 because resolving claim would require interpretation of CBA provisions). Mindful of the CBA's mandatory Grievance Procedure, the Court will dismiss the Plaintiffs' Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion to Dismiss [ECF No. 6] and ORDERS the Plaintiffs' Complaint DISMISSED.

SO ORDERED on September 3, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION